IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES, | ) |
| | ) |
| v. | ) |
| | ) |
| WILLIAM DANIELCZYK, Jr., & | ) 1:11cr85 (JCC) |
| EUGENE BIAGI, | ) |
| | ) |
| Defendants. | ) |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Eugene Biagi's Motion to Reconsider Meaning of 'Willfulness' Element of Campaign Finance Violations. [Dkt. 74.] For the following reasons, the Court will deny Defendant's Motion.

**I. Background**

The basic facts of this case are recounted in the Court's Memorandum Opinion dated May 26, 2011 which addressed Defendants' motions to dismiss. (*See* Mem. Op. [Dkt. 60].) Defendants are charged with illegally soliciting and reimbursing contributions from their employees to Hillary Clinton's 2006 Senate Campaign ("Senate Campaign") and 2008 Presidential Campaign ("Presidential Campaign"). (Indictment [Dkt. 1] ("Indict.").) The instant motion concerns Counts Two and Three, which charge making campaign contributions in the name of

1

another in violation of 2 U.S.C. § 441f and 18 U.S.C. § 2. Joint trial for Defendant Biagi and co-Defendant William P. Danielczyk, Jr. is set for February 26, 2013. [Dkt. 120-121.]

On May 26, 2011, this Court addressed Defendants' motions to dismiss Counts Two, Three, Four, Six, and Seven, granting dismissal with respect to Count Four and Paragraph 10(b) from the Indictment and denying dismissal as to the remaining counts. [Dkt. 52.] In doing so, the Court concluded that the intermediate standard for willfulness articulated in *Bryan v. United States*, 524 U.S. 184 (1998) -- that the defendant had acted with knowledge that his conduct was unlawful but not necessarily with knowledge of the specific statutory violation resulting in that unlawfulness – applied to Counts Two and Three.

On June 8, 2011, Defendant Biagi file a Motion to Reconsider Meaning of 'Willfulness' Element of Campaign Finance Violations. [Dkt. 74.] At a June 17, 2011 status conference, the Court held that this motion would be addressed when the Fourth Circuit's mandate on the appeal returned and that the Government's obligation to respond to the motion was relieved until then. [Dkt. 76.] The Fourth Circuit's mandate took effect on August 20, 2012. [Dkt. 114.] On November 16, 2012, Defendant Biagi noticed his Motion for hearing on January 4, 2013. [Dkt. 124.] On November 27, 2012, the Government filed

its opposition brief.  [Dkt. 127.]  Defendant filed his reply on December 9, 2012.  [Dkt. 133.]

Defendant's Motion is before the Court.

## II.   Standard of Review

The Federal Rules of Civil Procedure do not provide a vehicle for a "motion to reconsider."  Rather, they provide for a Rule 59(e) motion to alter or amend a judgment or a Rule 60(b) motion for relief from judgment.  Defendant does not specify whether he is bringing his Motion pursuant to Rule 59(e) or 60(b).  Pursuant to Rule 59(e), "a motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).  The Fourth Circuit has interpreted a motion for reconsideration as a motion to alter or amend a judgment pursuant to Rule 59(e) where that motion has been filed within the specified time period.  *See Lee-Thomas v. Prince George's County Pub. Sch.*, 666 F.3d 244, 247 n.4 (4th Cir. 2012); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 n.4 (4th Cir. 2011).  Here, Defendant's Motion was filed within 28 days of the Court's May 26, 2011 Memorandum Opinion and Order applying the intermediate standard of willfulness.  Accordingly, the motion will be construed as a Rule 59(e) motion to alter or amend a judgment.  *See* Fed. R. Civ. P. 59(e).

A district court has "considerable discretion in deciding whether to modify or amend a judgment."  *Gagliano v.*

3

*Reliance Standard Life Ins. Co.*, 547 F.3d 230, 241 n.8 (4th Cir. 2008). The Fourth Circuit has made it clear, however, that "[a] district court has the discretion to grant a Rule 59(e) motion only in very narrow circumstances: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hill v. Braxton*, 277 F.3d 701, 708 (4th Cir. 2002) (quoting *Collison v. Int'l Chem. Workers Union*, 34 F.3d 233, 236 (4th Cir. 1994)) (internal quotations omitted). A party's mere disagreement with the court's ruling does not warrant a Rule 59(e) motion, and such motions should not be used "to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). Rather, the purpose of Rule 59(e) motion is to allow "a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.'" *Id.* (quoting *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995)). A Rule 59(e) motion is "an extraordinary remedy which should be used sparingly." *Pac. Ins. Co.*, 148 F.3d at 403.

### III. Analysis

Defendants argued in their motions to dismiss that the ambiguity of the statutes underlying Counts Two, Three, Six, and Seven meant that they could not have "willfully" violated those statutes. That argument was based upon the notion that "willfulness," in the context of election law, connotes an awareness of the law's commands -- a heightened standard of intent found in the Supreme Court's opinions in *Ratzlaf v. United States*, 150 U.S. 135 (1994), and *Cheek v. United States*, 498 U.S. 192 (1991). This Court disagreed, choosing instead to apply an intermediate standard of willfulness as laid out in *Bryan*. Defendant Biagi seeks this Court's reconsideration of that decision, raising a number of compelling arguments in favor of the *Cheek/Ratzlaf* standard applying here. As discussed below, however, the Court concludes that it was correct in applying the *Bryan* standard instead of the *Cheek/Ratzlaf* standard.

Although the Court analyzed the issue of *mens rea* in detail in its initial Memorandum Opinion (Mem. Op. at 25-37), the Court agrees with Defendant that the issue was not fully briefed in the motions to dismiss. Nonetheless, the Court undertook a full review of the issue in its previous opinion out of necessity. As explained in the Memorandum Opinion, both Defendants and the Government in the motions to dismiss briefing seemed to take as a given that "willfulness" in this case

5

required that Defendants knowingly violate the law's specific commands, citing *Ratzlaf*. (*Id.* at 25-26.) Upon examination of relevant case law, however, it became clear to the Court that the question of *mens rea* was in fact so muddled that this Court could not simply follow that premise without further consideration. (*Id.*)

This Court therefore attempted to outline the different willfulness standards that have apparently evolved in federal criminal law, following then-Judge Sotomayor in breaking them down into three categories. First, there is the *Cheek/Ratzlaf* standard, which requires that the defendant know that he is violating an actual law. This standard applies "where the obscurity or complexity" of a criminal statute "may prevent individuals from realizing that seemingly innocent acts are, in fact, criminal," and thus willfulness requires the defendant to have known that he was violating a specific law. *United States v. George*, 386 F.3d 383, 390 (2nd Cir. 2004). Second, the *Bryan* standard simply requires that the defendant possess "knowledge of the conduct's general unlawfulness." *Id.* at 392. Third, the baseline standard simply requires that the defendant know what he is doing, regardless of his awareness of the law, and it applies where conduct by its nature could not be participated in innocently. *Id.* at 393-94.

The Court found that, while complex, the election statutes at issue did not pose as high of a risk of ensnaring individuals engaged in apparently innocent conduct as did highly technical statutes like tax law, and therefore did not warrant a *Cheek/Ratzlaf*-level *mens rea*. (Mem. Op. at 34-36.) The Court also found that the election statutes *could* potentially capture innocent conduct, thus precluding the baseline *mens rea*. (*Id.* at 36-37.) The Court therefore applied the *Bryan* standard, requiring knowledge of general unlawfulness in order to show that Defendants acted willfully. (*Id.* at 34-37.)

Defendant Biagi now asserts that the Court erred in choosing *Bryan* as opposed to *Cheek/Ratzlaf*. Defendant raises a number of arguments in support. First, Defendant argues that contrary to the Court's conclusion, campaign finance laws are complex and the conduct at issue is not intuitively nefarious and thus the *Cheek/Ratzlaf* standard should apply. (Def. Mot. at 8; Def. Reply at 1, 3-9.) Second, Defendant asserts that Congress intended to adopt the highest willfulness standard for campaign-finance violations, as evidenced by the text of the willfulness element in 2 U.S.C. § 437g(d)(1)(A) and by legislative history. (Def. Mot. at 16; Def. Reply at 2, 9-11.) Third, Defendant notes that the Department of Justice publically has taken the position for almost 20 years that the highest willfulness standard applies to campaign-finance violations, as

indicated in both its manual published soon after *Cheek* and *Ratzlaf* but before *Bryan* and by its manual published almost 10 years after *Bryan*. (Def. Reply at 2, 11-13; Def. Mot. at 15, 18.) Fourth, Defendant argues that the very limited case law on this issue, albeit pre-*Ratzlaf*, applies a *Ratzlaf*-like heightened standard of willfulness. (Def. Mot. at 18; Def. Reply at 6-7.)

In its opposition, the Government responds with several arguments. First, it argues that the language of the relevant statutory provision is plain, narrow, and unambiguous and that a reasonable person who knowingly uses a false conduit to hide the identity of the true campaign contributor is on notice that he or she is engaging in unlawful conduct. (Gov't Opp. at 5.) Second, the Government argues that the intermediate standard of requiring only knowledge of unlawfulness, rather than knowledge of a specific statutory violation, is consistent with Congress' purpose in enacting Section 441f to ensure full disclosure of campaign contributions, including the source of those contributions, so that citizens could make educated and informed decisions. (*Id.* at 6-7.) In contrast, the Government argues that imposing a higher standard for willfulness would increase the difficulty in enforcing contribution laws, undermining the purpose of the statute. (*Id.* at 7.) Relatedly, the Government asserts that Section 441f's legislative history

does not indicate that Congress was concerned with protecting persons who were aware of the general unlawfulness of their actions but not necessarily the specific statutory violations. (*Id.*) Third, the Government contests that the external reference materials to which Defendant cites -- the Department of Justice manuals and the FEC brochures -- do not undermine this Court's determination that the *Bryan* standard applies. (*Id.* at 8-10.) Fourth, the Government argues that the case law cited by Defendants is not relevant because it pre-dates *Cheek* and *Ratzlaf*, as well as *Bryan*. (*Id.* at 9.)

After careful review, the Court concludes that it was not a clear error of law to apply the *Bryan* intermediate standard for willfulness to this case and, therefore, the Court will deny Defendant's Motion. First, as the Court recognized in its previous Memorandum Opinion, "[m]any areas of federal law are 'complex,' including laws governing campaign contributions." (Mem. Op. at 36.) This increasingly is true given this age of constantly proliferating statutes and regulations. Nonetheless, "the phrase 'willfully' should not be interpreted to create unwarranted exceptions to the fundamental cannon of criminal law that ignorance of the law is no excuse." *George*, 368 F.3d at 393. To require proof of a defendant's knowledge of his or her specific statutory violation every time the statute at issue was somewhat complex would risk making the exception the rule,

gutting the principal that ignorance of the law is no excuse, and seriously hindering the enforcement of a vast number of statutes in practice.

Instead, courts have limited the *Cheek/Ratzlaf* standard to apply only to rare and "isolated circumstances," *George*, 368 F.3d at 392, involving two sets of "'highly technical' exceptional statutes . . . [:] federal tax laws, for which the Court has explicitly "carv[ed] out an exception to the traditional rule" that ignorance of the law is no excuse, and a complicated statute addressing structuring of cash transactions, where the Court limited its holding specifically to antistructuring laws." *U.S. v. Kay*, 513 F.3d 432, 451 (5th Cir. 2007) (citing *Cheek* and *Ratzlaf*). Numerous courts have refused to extend this highest standard of willfulness to statutes outside of those narrow contexts. *See e.g. Bryan*, 524 U.S. at 194-95 (refusing to apply *Cheek/Ratzlaf* standard to Firearms Owners' Protection Act); *U.S. v. Starnes*, 583 F.3d 196, 211-12 (3rd Cir. 2009) (same; involving transmission of falsified air-monitoring reports in violation of 18 U.S.C. § 1001(a), backpedaling from the circuit's previous application of the standard in the campaign finance context in *U.S. v. Curran*, 20 F.3d 560 (3d Cir. 1994)); *Kay*, 513 F.3d at 450-51 (refusing to apply the standard to the Foreign Corrupt Practices Act).

Moreover, in practice, the highest standard willfulness now primarily applies only to federal tax law, an area of law which remains "an enclave apart." *United States v. Aitken*, 755 F.2d 188, 193 (1st Cir. 1985). After the decision in *Ratzlaf*, Congress amended the antistructuring statute at issue and eliminated the heightened *mens rea* imposed by the Supreme Court. (*See* Gov't Opp. at 4 n.2 (citing 1994 Riegle Community Development and Regulation Improvement Act, Pub. L. No. 103-325, § 411, 108 Stat. 2160, 2253 (1994) and *United States v. Zehrbach*, 47 F.3d 1252, 1262 n.7 (3d Cir. 1995) (finding that the only *mens rea* currently required is that the defendant have the purpose of having a financial institution not file a required report).) The principal remaining context for the highest standard for willfulness -- federal tax law -- is, as noted in this Court's previous opinion, unique in its "likelihood of ensnaring innocent conduct through sheer bewilderment." (Mem. Op. at 36.) As other courts have noted, "[o]ne of the most esoteric areas of the law is that of federal taxation. It is replete with 'full-grown intricacies,' and it is rare that a 'simple, direct statement of the law can be made without caveat.'" *United States v. Regan*, 937 F.2d 823, 827 (citation omitted), *modified*, 946 F.2d 188 (2d Cir. 1991), *cert. denied*, 504 U.S. 940 (1992). Indeed, federal tax laws are the very definition of *mala prohibita* statutes.

Given the very isolated and unique remaining example of the requisite combination of technicality, obscurity, and complexity necessary for the highest standard for willfulness -- federal tax law -- and in light of the repeated refusals by other courts to extend this standard beyond that enclave as noted above, the Court concludes that it did not err in refusing to apply the *Cheek/Ratzlaf* standard to the instant case.

Second, the Court again concludes that the intermediate standard in *Bryan* "adequately demarcates the boundary between innocent and unlawful conduct" in the context at hand. *Starnes*, 583 F.3d at 211-12. In interpreting the *mens rea* required by criminal statutes, courts attempt to "achieve a fine balance between protecting innocent conduct and penalizing wrongful conduct." *George*, 386 F.3d at 392-93. "The presumption in favor of *scienter* requires a court to read into a statute only that *mens rea* which is necessary to separate wrongful conduct from 'otherwise innocent conduct.'" *Carter v. United States*, 530 U.S. 255, 269 (2000) (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994)). The Court concludes that, as in *Bryan*, "requiring only knowledge that the conduct is unlawful," as opposed to specific "knowledge of the law," is "fully consistent" with protecting "law-abiding citizens who might inadvertently violate the law" and

"individuals engaged in apparently innocent activity" involving campaign finance. 524 U.S. at 195 & n.23.

The Court's decision to apply the *Bryan* standard is consistent with other courts which require in jury instructions for felony violations of § 441f and § 2(b), as well as other campaign finance law violations, that the government prove that the defendant "acted voluntarily and was aware that his conduct was unlawful." *See* Jury Instructions at 21-22, *United States v. Acevedo Vila*, No. 08-36 (D.P.R. March 20, 2009), ECF No. 656; Jury Instructions at 16-17, *United States v. Fieger*, No. 07-20414 (E.D. Mich. June 2, 2008), ECF No. 348; Jury Instructions at 21, *United States v. Alford*, No. 05-69 (N.D. Fla. October, 7, 2005), ECF No. 86; *see also* Final Jury Instructions at 11, *United States v. Edwards*, No. 1:11-CR-161 (M.D.N.C. May 18, 2012), ECF No. 288 (employing the *Bryan* standard and explaining that willfulness requires only that the defendant "acted with knowledge that his course of conduct was unlawful and with intent to do something that the law forbids . . . not by mistake or accident"). Moreover, as noted in the Government's opposition brief, such cases generally also require that in order to show defendant's knowledge of the unlawfulness of his or her conduct, the government must prove that the defendant knew the true source of the contribution. (Gov't Opp. at 5-6.)

This requirement further decreases the risk that criminal penalties will be imposed on the basis of innocent conduct.

Third, not only would imposing a requirement of detailed knowledge of campaign finance laws go well beyond what is needed to screen out innocent conduct, it also would make enforcement of these laws and their underlying purposes very difficult. *See United v. Andrade*, 135 F.3d 104, 108 (1st Cir. 1998). Increased difficulty in prosecuting straw donor contributions would undermine Congress' broad purpose in enacting FECA, to "promote transparency" and "to ensure the complete and accurate disclosure of the contributors who finance federal elections." *United States v. O'Donnell*, 608 F.3d 546, 553-54 (9th Cir. 2010). FECA is unlike tax law, where "[i]nnocent 'avoidance' is an established part of" "a unique scheme consisting of myriad categories and thresholds, applied in yearly segments, designed to generate appropriate levels of taxation while also influencing behavior in various ways." *Ratzlaf*, 510 U.S. at 156 n. 8 (Blackmun, J., dissenting). In contrast, evading the reporting of contributions by using straw donor schemes "completely deprives the Government of the information that those requirements are designed to obtain, and thus wholly undermines the purpose of the statute." *Id.*

Moreover, contrary to Defendant's assertions, refusing to extend the *Cheek/Ratzlaf* standard does not necessarily

14

contradict legislative history indicating that Congress described "willful violations" as involving "specific wrongful intent" and that Congress was concerned about local civic organizations, for example, inadvertently violating campaign finance laws in the process of "with all good intentions endors[ing] a candidate for Congress in its literature." (*See* Def. Reply at 10 (quoting 122 Cong. Rec. H2542 (daily ed. Mar. 30, 1976) (Statement of Rep. Rostenkowski), as well as citing H. Rep. No. 94-917 at 4, and 122 Cong. Rec. H3779 (daily ed. May 3, 1978) (Statement of Rep. Hays).) The baseline *mens rea* standard for willfulness is not the sole alternative to applying the *Cheek/Ratzlaf* standard; instead, in its previous opinion, this Court acknowledged that some level of heightened *mens rea* was necessary to avoid capturing seemingly innocent conduct. (Mem. Op. at 36.) Requiring that a defendant have the specific wrongful intent to violate "the" law (*i.e.* to act unlawfully) rather than to violate "a" law (*i.e.* to violate a specific statutory provision), however, adequately addresses this need and Congress' concerns. A higher level of specificity is not necessary. For example, a local civil organization acting "with all good intentions" will not meet the standard for willfulness under *Bryan*. As noted above, the Court maintains that *Bryan*'s requirement of a defendant's "general awareness of the illegality of his or her acts" sufficiently delineates "the *mens*

15

*rea* boundary between protected and unlawful conduct" in this context. *George*, 386 F.3d at 394.

Finally, although the position taken by the Department of Justice manual is persuasive evidence in support of adopting the *Cheek/Ratzlaf* standard, it is not dispositive. The Court does not believe such evidence outweighs the considerations detailed above.

### IV. Conclusion

As a result, for the foregoing reasons and the reasons laid out in its prior Memorandum Opinion [Dkt. 60], the Court concludes that the *Bryan* standard is the correct standard for willfulness in this case. Accordingly, the Court will deny Defendant's Motion.

An appropriate Order will issue.

/s/

January 9, 2013  James C. Cacheris
Alexandria, Virginia  UNITED STATES DISTRICT COURT JUDGE